IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL STEPHEN JARED,

    Petitioner,

Case No. 2:12-cv-01241-HZ

v.

MARK NOOTH,

OPINION AND ORDER

    Respondent.

Anthony D. Bornstein, Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Samuel A. Kubernick, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

1 - OPINION AND ORDER

HERNANDEZ, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging the legality of his state-court convictions for Robbery in the First Degree, Kidnapping in the First Degree, Burglary in the First Degree, Felon in Possession of a Weapon, and Aggravated Theft in the First Degree. For the reasons that follow, the Amended Petition for Writ of Habeas Corpus (#22) is denied.

## BACKGROUND

Petitioner and the victim in this case, Mark Ghiglieri, first met each other in 2002. The following year, petitioner agreed to purchase Ghiglieri's riverfront home, but he soon failed to make the monthly payments on it. Trial Transcript, p. 105. According to the prosecution, petitioner's financial difficulties motivated him to set a scheme in motion whereby he would rob Ghiglieri.

Petitioner hired European "debt collectors" led by Patrick McCaffery to act as the "brawn" for his plan. Petitioner made arrangements for McCaffery and some of his associates to fly from England to Portland to help him collect $500,000 to $600,000 he claimed was owed to him by a "local problem." Respondent's Exhibit 122, p. 56. McCaffery arrived in Portland on November 19, 2003. Petitioner picked him up at the airport, and McCaffery and his wife stayed at petitioner's home. McCaffery's associates arrived

2 - OPINION AND ORDER

shortly thereafter and stayed at a local hotel. Trial Transcript, p. 152.

Petitioner had contacted Ghiglieri and informed him that he was having investors from New York City over to his home who were interested in investing $400,000 in one of Ghiglieri's business ventures. Petitioner asked Ghiglieri to come over for an investors' meeting and told him to bring lots of cash, wear his diamond Rolex watch, and drive his nicest car. *Id* at 81-82. Ghiglieri agreed, and took an early flight home from a Hawaiian vacation in order to attend the meeting. *Id* at 80.

When Ghiglieri arrived at petitioner's home, petitioner took him into the office where McCaffery and his team (who were masked) immediately assaulted Ghiglieri. They took Ghiglieri's jewelry, threatened to break his legs, and threatened to kill him. *Id* at 85. Petitioner advised Ghiglieri not to fight or resist, and told him that it would all be over soon. *Id.* The men secured Ghiglieri to a lawn chair in the basement with duct tape and zip ties, and obtained information from him about the combination to a safe as well as the alarm codes to his home and an airplane hangar in Aurora. *Id* at 89-90, 94-98. Petitioner took McCaffery and his associates to Ghiglieri's residence where they stole numerous valuable items. Petitioner also took the men to Ghiglieri's hangar in Aurora where they devised a way to take Ghiglieri's assets from the hangar.

3 - OPINION AND ORDER

The assailants returned to petitioner's home about two hours later where they forced Ghiglieri to sign documents concerning artwork and promissory notes pertaining to his property. *Id* at 99-102. When the assailants left again, Ghiglieri was able to free himself from the lawn chair, escape the home, and call 911 from a neighboring residence. During this time, petitioner drove McCaffery and his team to the Portland Airport. *Id* at 177-78. Petitioner did not alert the authorities as to what had occurred, nor did he go to his wife's home to check on the well-being his family after dropping McCaffery at the airport.

At his subsequent trial, petitioner did not dispute that Ghiglieri had been assaulted and robbed, but claimed that he, too, had been a victim of McCaffery and his associates. He testified that for two years prior to the criminal incident in question, he had been running a credit union, Worldwide Financial Service, where he managed funds for approximately 250 investors and invested those funds in high-yield return programs. One of those programs was run by a Portland-based currency trading firm named Orion. *Id* at 133-35, 141.

Petitioner discovered that Orion had been fraudulent in its handling of its investments and, as a result, his investors had lost approximately $9,000,000. *Id* at 142. Eventually, petitioner came into contact with another investor who believed he had been similarly defrauded by Orion and, according to petitioner, the

4 - OPINION AND ORDER

investor recommended McCaffery to help solve the problem. *Id* at 141-45, 147.

Petitioner claimed that on the morning the parties were due to meet with Ghiglieri, McCaffery suddenly turned on petitioner and demanded money from him based upon petitioner's supposed participation in the Orion scheme. *Id* at 155-56. McCaffery and his wife took "well over $200,000" from petitioner's bedroom and informed him that they needed another $200,000 to be "squared away." *Id* at 157. According to petitioner, McCaffery also stated that he had petitioner's family under surveillance and would harm them if petitioner did not cooperate.[1] *Id* at 156.

The issue at trial was whether petitioner was under duress and a victim of McCaffery as well, or was instead working in collaboration with McCaffery to deprive Ghiglieri of his possessions. The case was tried to the court, petitioner was the only defense witness called, and the trial judge concluded that petitioner's "version of these events simply is not credible." *Id* at 276. As a result, the trial judge convicted petitioner of Robbery in the First Degree, Kidnapping in the First Degree, Burglary in the First Degree, Felon in Possession of a Weapon, and Aggravated Theft in the First Degree. As a result, the court

---

[1] Petitioner was estranged from his wife, and did not share his home with her.

sentenced petitioner to 210 months in prison. Respondent's Exhibit 101.

Petitioner took a direct appeal where he raised a claim of sentencing error not relevant to this habeas proceeding. The Oregon Court of Appeals affirmed the trial court's Judgment without opinion, and the Oregon Supreme Court denied review. *State v. Jared*, 218 Or. App. 736, *rev. denied*, 344 Or. 539, 186 P.3d 285 (2008).

Petitioner next filed for post-conviction relief ("PCR") raising claims of ineffective assistance of trial and appellate counsel, as well as a claim of prosecutorial misconduct. Among petitioner's allegations, he claimed that his trial attorney failed to contact witnesses who could have supported his testimony, and that counsel failed to investigate Ghiglieri's background including a civil lawsuit brought against one of Ghiglieri's businesses. Respondent's Exhibit 111. Petitioner supported his claims with the filing of seven affidavits and voluminous other documents.

After reading the entire file, including the underlying trial transcript, the PCR trial court denied relief on all of petitioner's claims. In doing so, the PCR trial judge made a number of findings and gave "considerable weight" to the credibility determination of the trial judge which she found "not surprising." Respondent's Exhibit 158, pp. 4-5. The Oregon Court of Appeals affirmed the PCR trial court's decision without opinion,

6 - OPINION AND ORDER

and the Oregon Supreme Court denied review. *Jared v. Nooth*, 248 Or. App. 480, 275 P.3d 207, *rev. denied*, 352 Or. 107, 284 P.3d 485 (2012).

Petitioner, with the assistance of appointed counsel, filed his Amended Petition for Writ of Habeas Corpus in this court on January 24, 2013 wherein he raises a variety of claims. Respondent asks the court to deny relief on the Amended Petition because: (1) petitioner has not briefed all of his claims, and therefore fails to meet his burden of proof as to the unargued claims; (2) petitioner raises an allegation within his supporting memorandum that is not contained in his Amended Petition, thus the claim should not be considered; and (3) the claims of ineffective assistance of counsel which are contained in the Amended Petition and argued in petitioner's supporting memorandum were properly denied in a state-court decision that was not objectively unreasonable.

## DISCUSSION

### I. Unargued Claims

There are several claims within the Amended Petition which petitioner has not briefed: Ground I(A)(2)(viii), Ground I(A)(4), Ground I(A)(8), and Ground II. Petitioner has not carried his burden of proof with respect to these unargued claims. *See Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (petitioner bears

7 - OPINION AND ORDER

the burden of proving his claims). As such, relief on these claims is denied.

## II. Unpled Claim

In his supporting memorandum, petitioner argues that trial counsel should have called Michael Kennedy as a witness at his trial because Kennedy would have supported petitioner's testimony. Memo in Support (#32), p. 14. No such claim is contained within the Amended Petition. As a result, the claim is not properly before the court for its consideration. *See* Rule 2(c), Rules Governing Section 2254 Proceedings, 28 U.S.C. foll. § 2254 (requiring each habeas petition to "specify all the grounds for relief which are available to the petitioner"); *Greene v. Henry*, 302 F.3d 1067, 1070 fn 3 (9th Cir. 2002) (a court need not consider claims not raised in the petition).

## III. Ineffective Assistance of Counsel

As previously noted, the central issue at trial was whether petitioner conspired with McCaffery or was, like Ghiglieri, a victim. Petitioner presented a choice of evils defense at trial, testifying that he feared for his well-being as well as that of his family, and assisted McCaffery and his men only due to fear of retribution if he did not.

During his PCR trial, petitioner changed his theory somewhat, contending that Ghiglieri actually was the mastermind behind his

8 - OPINION AND ORDER

own kidnapping and robbery.[2] He claimed that had his trial attorney performed a fuller investigation, the result of the trial would have been different.

In this proceeding, petitioner claims that his attorney was ineffective when he failed to properly investigate the case. He argues that instead of simply relying only upon petitioner's bare and unsupported testimony, counsel should have called a variety of witnesses who could have corroborated petitioner's testimony. Specifically, petitioner asserts that the following should have been introduced during the defense's case:

> 1. William Glausi would have rebutted the State's contentions that petitioner was deeply indebted to the victim, and that the "local problem" referenced in petitioner's emails to McCaffery which were construed to pertain to Ghiglieri were actually about another business associate, Seamus Lennon;
>
> 2. Petitioner's ex-wife, Darlene Jared, told the investigating detective that petitioner was not having any financial problems;
>
> 3. Petitioner's neighbor, Jerry Larsen, could have testified that petitioner sought to sell his home in 2003, thereby in some way establishing that petitioner was not in serious financial trouble;
>
> 4. Debbie Owens, an escrow officer, could have testified that she had opened an escrow account to facilitate the transfer

---

[2] It appears that petitioner's theory at trial was that Duncan Johnson (who had recommended McCaffery) masterminded the scheme.

9 - OPINION AND ORDER

        of petitioner's home to Ghiglieri for $1,350,000. This would have contradicted Ghiglieri's testimony that he and petitioner never came to an agreement pertaining to the home;

5. Detective Wendy Babst was the first person to interview petitioner and could have testified that she saw a real estate sign in petitioner's front yard, and that he reported to her that he feared for his safety as well as that of his family;

6. Terrence McCauley, an Estacada lawyer enlisted to recover assets purportedly taken by Orion, concluded that petitioner was a victim of the Orion scandal and was not a participant in the scheme;

7. Greg Johnson, a jewelry store owner, could have testified to Ghiglieri's character for untruthfulness;

8. Counsel should have introduced the size of the storage unit petitioner rented because it was too small to have held the property stolen from Ghiglieri;

9. Had counsel called Michael Andrews, an employee of Trans Pacific Leasing in 2003, he could have corroborated portions of petitioner's testimony concerning relationships among different businessmen; and

10. Counsel should have offered documentation from a civil lawsuit filed against Ghiglieri, as evidence from that case would have supported petitioner's testimony that he did not have a financial motive to rob the victim.

A. **Standard of Review**

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in

10 - OPINION AND ORDER

a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous. *Id* at 410. The state court's application of clearly established law must be objectively unreasonable. *Id* at 409.

///

11 - OPINION AND ORDER

B.   <u>Analysis</u>

Because no Supreme Court precedent is directly on point that corresponds to the facts of this case, the court uses the general two-part test established by the Supreme Court to determine whether petitioner received ineffective assistance of counsel. *Knowles v. Mirzayance*, 556 U.S. 111, 122-23 (2009). First, petitioner must show that his counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984). Due to the difficulties in evaluating counsel's performance, courts must indulge a strong presumption that the conduct falls within the "wide range of reasonable professional assistance." *Id* at 689.

Second, petitioner must show that his counsel's performance prejudiced the defense. The appropriate test for prejudice is whether the petitioner can show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id* at 694. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *Id* at 696. When *Strickland's* general standard is combined with the standard of review governing 28 U.S.C. § 2254 habeas corpus cases, the result is a "doubly deferential judicial review." *Mirzayance*, 129 S.Ct. at 1420.

12 - OPINION AND ORDER

The PCR trial court determined that evidence from the civil proceeding against Ghiglieri, and any evidence pertaining to his character, would not have been admissible because it was irrelevant. Respondent's Exhibit 158, p. 3. This federal habeas court takes this state-court determination of state law as true. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). As such, counsel cannot be faulted for not attempting to introduce inadmissible evidence.

With respect to petitioner's theory in his PCR trial, the PCR trial court specifically determined that "there was no evidence that would have been admissible to prove that [Ghiglieri] was the mastermind" and that "[t]he responsibility of [Ghiglieri] for the crime was not ever raised by the petitioner with his attorney. He knew who was responsible and told the court why. He now, after discussion with his PCR attorney has a new theory." *Id* at 3.

As for the contention that counsel should have called additional witnesses to corroborate petitioner's trial testimony, the PCR trial court concluded:

> this is essentially about what happened inside the house on this day. Only two people are available to testify about that. Both testified. The court found petitioner to be not credible in his testimony that he too was a victim. Even if things like the house being for sale, petitioner moving or Mr. Glausi's admittedly incomplete understanding of petitioner's finances, one is struck by the incriminating, still unexplained evidence left--petitioner, not [Ghiglieri] hired McCaffery, brought him and his associates to

13 - OPINION AND ORDER

>       Portland, set up the meeting with [Ghiglieri],
>       had [Ghiglieri] wear his jewelry and bring a
>       roll of cash, had a shotgun in the house, knew
>       about the hangar and its contents, drove the
>       assailants to the airport and dropped them
>       off--failing to contact the police or
>       security, rented a storage locker near the
>       hangar for 1 week and went back to the house
>       rather than [] check on his family--all things
>       that would have still been unexplained even
>       with additional witnesses.

*Id* at 4.

Petitioner fails to show how this well-reasoned decision amounts to an unreasonable application of clearly established federal law. There was no question that petitioner was instrumental in bringing McCaffery to Portland. He was also not only responsible for setting up the meeting with Ghiglieri, but also assisted McCaffery and his associates in carrying out their crimes against Ghiglieri. While petitioner claimed duress, it is telling that he set up the meeting between McCaffery and Ghiglieri under the representation that McCaffery was a wealthy investor from New York City. He never told Ghiglieri that McCaffery was from England, or that he was a debt collector. Trial Transcript, pp. 81-82. What is especially important about these facts is that they show petitioner misled Ghiglieri about the meeting well before McCaffery allegedly threatened petitioner.

Petitioner emphasizes that certain witnesses could have testified that he was not experiencing significant financial trouble at the time of the crimes, thereby defeating the State's

14 - OPINION AND ORDER

theory of motive. However, the evidence he presented to the PCR trial court was not significant and would not have affected the outcome of the trial. Not only was petitioner's PCR evidence not significant in terms of his culpability, but much of it would not have established what he purports. For instance, petitioner's ex-wife, who was not living with him, would not have been a highly reliable witness as to what the current state of his finances were. While she advised authorities that petitioner was not having any financial difficulties, she also informed them that she didn't know who Ghiglieri was, didn't know anything about the events of November 19, 2003, and didn't know any of petitioner's friends. Respondent's Exhibit 123, p. 2.

Similarly, while petitioner wished to rely on Glausi's understanding of his financial well-being, Glausi testified during the PCR trial that petitioner's financial situation was so complex that he could not determine what petitioner's net value actually was. Respondent's Exhibit 157, p. 29. Moreover, while petitioner claims that counsel should have introduced the dimensions of the storage unit he rented near Ghiglieri's Aurora hangar just before the crimes at issue, he actually testified about the storage unit and its dimensions. Trial Transcript, p. 168.

Petitioner's testimony at trial was not credible, and the additional evidence he wishes counsel would have submitted would have neither bolstered his credibility, nor otherwise affected the

15 - OPINION AND ORDER

outcome of his case. Accordingly, the PCR trial court's decision denying relief on petitioner's claims is neither contrary to, nor an unreasonable application of, clearly established federal law.

## CONCLUSION

For the reasons identified above, the Amended Petition for Writ of Habeas Corpus (#22) is DENIED. The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 11th day of July, 2014.

*Marco Hernandez*
Marco A. Hernandez
United States District Judge

16 - OPINION AND ORDER